Filed 12/21/15  P. v. Pacheco CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE ALBERTO PACHECO,<br><br>        Defendant and Appellant. | A143081<br><br>(Sonoma County<br>Super. Ct. No. SCR629099) |

Jose Alberto Pacheco appeals from a judgment entered after he pleaded no contest to an information charging him with one count of Penal Code,[1] section 288.5, subdivision (a) (continuous sexual abuse of a child under the age of 14) and two counts of section 288, subdivision (c)(1) (lewd and lascivious act with a child 14 or 15 years of age).  His counsel on appeal has filed an opening brief asking this court to conduct an independent review of the record as is required by *People v. Wende* (1979) 25 Cal.3d 436.  Counsel also informed Pacheco he had the right to file a supplemental brief on his own behalf.  Although Pacheco did not file a brief, he did write a letter to this court identifying two issues on appeal: 1) improper denial of his *Miranda*[2] motion and 2) improper reliance on

---

[1] All unspecified statutory references are to the Penal Code.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

his statements to the probation department as a basis for his sentence. Having conducted a full-record review, we find no issues that merit briefing. We therefore affirm.

## I. BACKGROUND

### A. Police Interrogation and Miranda warnings

Pacheco was detained by an unidentified officer from the Sonoma County Sheriff's Department January 30, 2013 and taken to an interrogation room at the Sheriff's Office for an in-custody interrogation that afternoon. Once there, the officer removed Pacheco's handcuffs and directed him to stay in the room and stay seated; before leaving, he told Pacheco that the water in the room is for him to drink, and to "[j]ust relax and they'll be in to talk to you and explain everything to you . . . ." Detective Mechelle Buchignani then entered to check on Pacheco. As Buchignani asked background questions of Pacheco, he stated "I'm like really nervous. I don't know what's going on." Pacheco also asked Detective Buchignani, "[A]m I, am I arrested?," to which she responded, "I'm not sure what's going on right now...my partner should be here pretty soon, so . . . [¶] . . . Yeah you're not free to leave at this moment."

Several hours later, around 5:19 p.m., Detective Travis Koeppel entered the room to collect DNA samples from Pacheco. Pacheco asked Koeppel "what is this about?" and Koeppel responded that he did not know the circumstances of Pacheco's case and was just there to collect DNA samples. Pacheco told Koeppel at least three times that he did not know what was going on and attempted to get more information about why he was in custody. Pacheco told Koeppel how "they just put in me handcuffs. I'm like a suspect in something, huh? That's what it is?" Koeppel responded, "Uh, I don't know. Just . . . your best policy is they'll ask you questions, just answer honestly . . . " and also told Pacheco that "[i]f you got, you got nothing to hide then . . .[¶] . . . Just answer the detective honestly and . . . [¶]. . . you should be alright."

Detective Buchignani then returned with Detective Berges. Berges asked Pacheco whether someone arrested him at his house and Pacheco confirmed that he was arrested. The record is silent as to whether Mr. Pacheco was informed of the charges at the time of

his arrest; Detective Berges did not inform him of the nature of the charges prior to reading him his *Miranda* rights.  The exchange then went as follows:

"D [etective Berges]:  Alright, well they probably didn't read you your Miranda Rights then.  But I'm gonna read 'em to you now . . .

JP [Jose Pacheco]:  Yes, sir.

D:  . . . so that you understand, okay?  You have the right to remain silent, anything you say . . .

JP:  Okay.

D:  . . . can and will be used against you in the court of law.

JP:  Mm-hm.

D:  Do you understand that? Okay, you--

JP:  Oh, so am I arrested?

D:  Yes.

JP:  What is the reason?

D:  Well let me read you these and then we can . . .

JP:  Okay.

D:  . . . talk about it.  So I'm gonna start over. You have the right to remain silent. Anything you say can and will be used against you in a court of law."

JP:  Okay.

D:  You have the right to talk to a lawyer and have him present with you while you're being questioned.

JP:  Okay.

D:  If you cannot afford to hire a lawyer, one will be appointed free of charge to represent you before and during any questioning.

JP:  Okay.

D:  Do you understand?

JP:  Mm-hm.

D:  Wanna talk to me about why you're here?

JP:  I don't know sir.

D: Do you wanna talk to me about why you're here?

JP: What do you mean?

D: Would you like to talk to me about why you are under arrest?

JP: No, sir, I don't know.

D: Do you understand what I am asking?

JP: Not really.

D: Okay, do you want to talk to me?

JP: Yes, sir.

D: About this?

JP: Yes, sir."

Detective Berges then told Pacheco that he needed "a hundred percent honest[y]" and "[n]o lying" so "we can get you outta here" and "get you maybe help if you need help." Pacheco initially denied touching his stepdaughter, Jane Doe, inappropriately. Detective Berges repeatedly told Pacheco he needed to be honest, and told Pacheco that they "want to make sure that [Jane Doe] isn't gonna grow up and have all these problems in her head" and that they "need to be able to explain to [Jane Doe] that you didn't mean to hurt her." The detective continued the conversation in that vein, telling Pacheco that they needed to make sure that Jane Doe was okay, and that "[t]his is not about you . . . this is about her." Focusing on getting Jane Doe the helps she needed, Detective Berges explained that "[p]art of that is you owning up to this and saying, I'm really sorry, I did not mean to hurt you. I love you. But I'm not gonna put words in your mouth." At that point Pacheco asked the detective, "So, where am I right now, sir? That's what I want to know." Detective Berges did not respond to that question, but instead, after more denials from Pacheco, told him, "I'm not gonna even bother helping you if you can't be honest with me." Detective Berges also told Pacheco that his semen was found in Jane Doe's bedroom on her mattress, insinuating that such evidence proved Pacheco was lying.[3]

---

[3] At the hearing on the *Miranda* motion, Detective Berges admitted that at the time he told Mr. Pacheco that Pacheco's seminal fluid had been found, that was untrue—there

4

Ultimately, Pacheco said "So if I told you I touch her, what then? Cause I don't know what you want me to told you." Detective Berges said "I want you to tell me the truth," to which Pacheco responded "Okay. I touch her. Okay." Pacheco said the conduct started around four or five months earlier, and that he touched her six or seven times, sometimes masturbating at the same time. The detective offered to let Pacheco write his stepdaughter a note to "make this better" with her, but Pacheco told the detective he did not know how to write in English. While Pacheco admitted to touching and rubbing his stepdaughter's vagina, he consistently denied that he ever touched her when the family lived in Santa Rosa, and said the touching only happened after they moved into their house in Windsor about a year earlier, stating "I can't admit to I did, if I didn't."

## B. Preliminary hearing testimony of Jane Doe

Pacheco declined the district attorney's offer to settle the case prior to the preliminary hearing. Jane Doe testified as the only witness at the preliminary hearing, which was held on May 10, 2013. Jane, who had just turned 16 a few days earlier, testified that Pacheco was her stepfather and she has known him since she was two years old. She testified about a pattern of sexual abuse by Pacheco that started when she was about nine years old when they were living in a house in Santa Rosa. She recalled "times when I would be sleeping and around nighttime I would wake up to him [Pacheco] next to me in the bed." During these times, Jane testified that Pacheco would start with his hand around her knee or thigh and then move it up her leg, ultimately moving his hand under her shorts to touch and rub her vagina over her underwear. Jane would fidget or move until Pacheco retreated. She said she did not tell anyone because she was scared. She estimated that this conduct occurred every few weeks from the ages of nine to twelve. At age 12, the family started living in a different house in Santa Rosa. At this age, Pacheco began touching her vagina under her underwear instead of over top of it. She again estimated that the touching happened every few weeks. She did not recall if any touching occurred when she was 13. Jane testified that it again progressed after she

was a presumptive positive test for seminal fluid, but the fluid had not yet been identified as belonging to Mr. Pacheco.

5

turned 14, at which point sometimes Pacheco would touch inside the lips of her vagina. At this age it occurred every few months. Jane finally told one of her friends when she was about 15 years old. She eventually told her mother in January of 2013, which lead to Pacheco's arrest and prosecution. At that time the family was living in Windsor.

The court held Pacheco to answer based on Jane Doe's testimony. An information filed on May 24, 2013, charged the same three counts on which Pacheco was held to answer, but the time frames alleged were slightly modified. It charged Pacheco with one count of section 288.5, subdivision (a) for the time period of May 7, 2006 through May 6, 2011 (Count I) and two counts of section 288, subdivision (c)(1), for the time periods of May 7, 2011 through May 6, 2012 and May 6, 2012 through January 30, 2013, respectively (Counts II and III).

## C. Defense motion to suppress

Pacheco's trial began with motions in limine on June 23, 2014. At that time, the parties conducted a hearing on a defense motion to suppress Pacheco's statements to law enforcement based on violations of *Miranda* and Pacheco's due process rights. Pacheco's counsel argued that his waiver of right under *Miranda* was not voluntary, knowing, and intelligent. Defense counsel also argued that law enforcement coercion made Pacheco's confession "involuntary" under the Fourteenth Amendment Due Process Clause. The bulk of the hearing consisted of the court viewing the tape-recorded video of Pacheco's interview. Pacheco's counsel also planned to call Dr. Ricardo Winkel to present expert testimony regarding the voluntariness of Pacheco's confession.

The court indicated that it would start by deciding whether Pacheco "voluntarily, knowingly and intelligently" waived his *Miranda* rights. After the court watched the video and heard testimony from the Sheriff's employees who interacted with Pacheco around and during the time of his interrogation, it denied the motion to suppress Pacheco's statement, noting that "there is nothing about this [video] that leads me to believe [Pacheco] did not knowingly, intelligently voluntarily waive or that he did not understand what was being said to him." The court specifically said that there was nothing, considering the entirety of the video, "that indicates . . . that this is a

6

comprehension issue, that [Pacheco] doesn't understand English, that he didn't know what was going on." The court found that Pacheco's hesitation and equivocal statements such as "no, I'm not sure" was him "struggling about whether or not he wants to talk, not whether or not he understood whether he could or could not."

The court reserved its ruling on the voluntariness issue to review several cases cited by Pacheco's counsel and determine whether it needed to hear from Dr. Winkel on the subject. However, it indicated that it saw the issue of voluntariness of the statements as a "legal argument about voluntariness as opposed to an expert arguing about voluntariness." The next day, the court denied the defense request for a hearing pursuant to Evidence Code section 402 to determine the voluntariness of Pacheco's statements. In doing so, the court stated: "[T]he Court is going to find that [the] statement was voluntarily made, that there was not undue coercion by law enforcement. . . . This is about the entirety of the interaction that occurred between [Pacheco and the interrogating officers] and how that occurred. And I simply do not find that he was coerced to the extent that his statement was not free will or not voluntary."

**D. Plea and Sentence**

On June 25, 2014, the parties reconvened for a 402 hearing as to potential trial testimony of Dr. Winkel. Pacheco's counsel indicated that she had decided not to call Dr. Winkel at trial. Counsel also indicated that Pacheco declined to accept the district attorney's most recent offer of pleading to counts one and two of the information for a term of 12 years, 8 months and a dismissal of count three. After Pacheco himself confirmed that he did not want to accept the offer of the prosecution, his attorney stated that "[i]f the Court feels [its] input on settlement would be appropriate, we have no objection to that." The court and the parties then had an off-the-record discussion in chambers. After that discussion, Mr. Pacheco plead to the information as charged, pleading open to the court rather than accepting an offer from the prosecution.

Pacheco executed a written advisement of rights, waiver and plea form that was reviewed with a Spanish-language interpreter. On the form, Pacheco placed his initials in a box next to the section indicating that he understood that he was pleading no contest to

7

all three charges, and that he understood the charges carried a maximum total punishment of 17 years, 4 months.  Pacheco also initialed the box next to the section that said "Open Plea -- I understand that there is no agreement or indication as to the sentence I will receive on this matter.  I could be sentenced up to the maximum penalty as stated above." Additionally, the sections entitled "Indicated sentence" and "1192.5 PC Negotiated Disposition" were crossed out and the boxes next to those sections did not contain Pacheco's initials.  The plea form also had a section to indicate where a term of custody was stipulated.  Pacheco's initials appeared in the box next to this section, but instead of a stipulated term of years, the words "open plea to court" were handwritten into that space. Pacheco, his Spanish-language interpreter, and his defense counsel all signed the plea form indicating the validity of its contents.

During the plea colloquy, the court reminded Mr. Pacheco that he was "making an open plea to the Court, which means there have not been any promises, you haven't negotiated an agreement with the District Attorney's office, and so no promises have been made, and you understand that?"  Pacheco acknowledged that he understood that no specific promise as to sentence had been made.  He entered pleas of no contest to all three counts of the information.  When the court asked if there was a factual basis for the plea, Pacheco's attorney responded, "Your Honor, pursuant to *People vs. West* and *Alford*, please."[4]  The court found that the video of Mr. Pacheco's police interview, along with the evidence from the preliminary hearing, formed the factual basis of Pacheco's plea to the court.

Pacheco was sentenced on August 14, 2014.  The probation department recommended that the maximum sentence of 17 years and four months be imposed.  At sentencing, the district attorney asked for the court to impose the midterm of 12 years on the section 288.5 charge (Count I).  Pacheco's defense attorney argued for the court to

---

[4] Pacheco's attorney was referring to *People v. West* (1970) 3 Cal.3d 595 and *North Carolina v. Alford* (1970) 400 U.S. 25. This plea, commonly known as an *Alford* plea, is one in which a defendant pleads guilty while maintaining his or her innocence. (See Cal. Crim. Law: Procedure and Practice (Cont. Ed. Bar 2015) § 26.45, p. 774.)

impose the low term of six years on the section 288.5 charge. The defense attorney reminded the court that Pacheco "entered the plea pursuant to . . . *Alford vs. North Carolina* and *People vs. West*" and that he did so "purely to save the discomfort, the stress, the embarrassment, the trauma of putting this young lady and her family through trial."

Prior to announcing the sentence, the court commented that it was "most disturbed by Mr. Pacheco's statement to Probation denying that [anything] ever happened." The court also indicated that Mr. Pacheco's denial was "somewhat different than my understanding of his taking somewhat of responsibility for actions that happened in Windsor versus Santa Rosa when he first talked about entering this plea" and that Pacheco's decision to deny any wrongdoing "negates any credibility he has about the level to which this occurred."

The court listed several factors in aggravation, including that the victim was young and vulnerable, Pacheco was in a position of authority, and Pacheco showed "zero remorse" over the commission of the crimes. Specifically, Pacheco's failure to acknowledge his role in the crimes, the court opined, was "inconsistent with the . . . videotaped interview that this court personally viewed." The court also acknowledged as a mitigating factor that Mr. Pacheco entered a plea before his family (including the victim) had to testify at trial in front of a jury.

The court found that the "factors in aggravation and the factors in mitigation are balanced" and imposed the midterm of 12 years on count one, the section 288.5 charge, deemed to be the principal term. As to counts two and three, the court imposed eight months for each as required by law (see Penal Code § 1170.1, subd. (a)), to be served consecutive to the base term of 12 years, for an aggregate term of 13 years and four months. The court explained: "The Court does believe that that's an appropriate sentence based on the circumstances and factors in this case, having viewed the videotaped confession and mostly because I'm extremely disappointed, disgusted quite frankly that there was not only any responsibility by Mr. Pacheco but that there also seemed to be

9

blame toward the victim and the family. That is extremely disconcerting in light of the facts of this particular case."

**E. Certificate of Probable Cause and Procedural History on Appeal**

Pacheco filed a timely notice of appeal. The trial court granted Pacheco's request for a certificate of probable cause as to the denial of the motion to suppress and exclude Pacheco's statements. (See § 1237.5 [certificate of probable cause is prerequisite for appeal from judgment of conviction upon guilty or no contest plea].) On March 5, 2015, Pacheco's appointed appellate counsel filed an opening brief addressing the merits of the *Miranda* issue. On March 10, 2015, counsel moved to strike the opening brief and sought leave to file a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436; we granted the motion and the *Wende* brief was filed. Counsel notified Pacheco of his intention to file a *Wende* brief and advised him of his right to file a supplemental brief on his own behalf within 30 days. Pacheco filed a letter with this court identifying two issues on appeal: 1) improper denial of his *Miranda* motion and 2) improper use of his statement to probation in sentencing.

## II. DISPOSITION

Having conducted an independent review of the record on appeal under *People v. Wende*, *supra,* 25 Cal.3d 436, and considered whether there are any arguable issues that merit briefing, we find none.

In the course of our review, we have taken into account the specific points Pacheco noted in writing to the court following his counsel's *Wende* notification. In accordance with *People v. Kelly* (2006) 40 Cal.4th 106, 110, we address those issues briefly, as follows:

First, after reviewing the videotapes of Pacheco's interrogation, we see no *Miranda* violation. The *Miranda* warnings were complete and clearly given. While it is clear that Pacheco spoke with an accent, there is no indication that his comprehension was impaired due to a language barrier. To the contrary, the videotaped recording of his interrogation shows him conversing fairly easily with the Sheriff's deputies in English. He never spoke in Spanish and he never gave any indication he could not understand the

10

background questions being asked of him.  We find substantial evidence to support the trial court's conclusion that Pacheco's equivocal response to Detective Berges was indicative of him "struggling about whether or not he wants to talk, not whether or not he understood whether he could or could not."  We also find substantial evidence to support the trial court's conclusion that Pacheco was not coerced into making confessions.  We cannot conclude that Detective Berges made any promises or offers of leniency.  Rather, he appears to have done no more than point out the advantages of telling the truth.

Second, we see no infirmity in the sentence imposed.  The court had discretion under Penal Code section 1170, subdivision (b) to choose the "appropriate term" that it determined "best serve[d] the interests of justice."  In making that choice, California Rules of Court, rule 4.420(b) specifically authorized the court to consider anything in the case record and in the probation officer's report.  In this case, the court even chose to deviate downward from the probation department's upper term recommendation.  We find no abuse of discretion.

The judgment is affirmed.

 

_____\
Streeter, J.

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.

11